UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
CYNTHIA BALER,                  )
                                )
        Plaintiff,              )
                                )    C.A. 04-11885-JLA
v.                              )
                                )
UNITED STATES OF AMERICA,       )
                                )
        Defendant.              )
_____)

### UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendant, the United States of America, hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment on all of Plaintiff Cynthia Baler's claims.

## I.    INTRODUCTION

On September 11, 2002, the Plaintiff fell on the property of the United States Postal Service located in Medfield, Massachusetts.  The Plaintiff alleges that as she exited the facility, she tripped and fell over a bunched up mat near the exit doors.  The Plaintiff contends that placing a movable mat in an area where it would get struck repeatedly by the doorway and bunch up created a dangerous condition on the premises.

The United States moves for summary judgment on the grounds that: (1) the dangerous condition (if any) was not one the United States created, knew of or should have known of, and thus, any failure of the United States to correct the dangerous condition

cannot be a breach of the standard of care; and (2) the condition as described by the Plaintiff was "open and obvious," and consequently, the United States had no duty to warn of the condition.

**II.   FACTS**

    A.   <u>LAYOUT OF THE MEDFIELD POST OFFICE</u>

Customers enter the Medfield Post Office through a vestibule that faces Front Street in Medfield.  Deposition of Stephen J. Kelley ("Kelley Depo."), at 10, 11, attached hereto as Exhibit A.[1]  The vestibule is rectangular, and protrudes out from the rest of the building.  <u>Id.</u>  There are two entrances to the vestibule -- one entrance is on the right side and one entrance is on the left side.  <u>Id.</u>

At the time of the Plaintiff's alleged incident, there were two types of floor mats inside the vestibule.  Kelley Depo. at 18; Photograph of Vestibule, attached hereto as Exhibit B. There were two stone, slatted mats built into the vestibule floor which were located immediately inside vestibule and directly in front of each entrance to the vestibule.  Kelley Depo. at 18 These mats are rough and are used to scrape dirt off of customers' shoes.  <u>Id.</u> at 47.  The second type of mat was a large

---

[1] Mr. Kelley is currently the Postmaster of the Medfield Post Office.  At the time of the Plaintiff's alleged incident, Mr. Kelley's title was Supervisor, Customer Service.  The Postmaster at the time of the Plaintiff's alleged incident is now deceased.  Kelley Depo. at 7, 40.

black removable mat that lay between the two slated mats and in
front of a second set of doors leading into the main post office.
Id. at 20.  This mat had a rubber back and bristled front.  Id.
Customers used the bristles to further wipe their shoes off
before entering the main post office.  Id.  The more absorbent
rubber backed mat also prevented customers from slipping and
falling on a slick floor.  Id. at 25, 47.  Both mats worked
effectively to keep the vestibule area safe for customers passing
through.  Id. at 25, 26.  In fact, since the Medfield Post Office
opened in 1998, no one other than the Plaintiff ever stumbled,
tripped, or fell in the post office vestibule as a result of the
mats placed there, before or after the Plaintiff's incident.  Id.
at 8, 26.

Once inside the vestibule, customers must pass through a
second set of glass doors to enter the "main" post office.
Deposition of Cynthia Baler ("Mrs. Baler Depo."), at 14, 15,
attached hereto as Exhibit C; Exhibit B; Plaintiff's March 9,
2005, Drawing of Medfield Post Office Vestibule, attached hereto
as Exhibit D.  In the main post office, past both sets of doors,
customers may check post office boxes and/ or purchase items from
window clerks.  Kelley Depo. at 11.  Notably, the wall and doors
separating the vestibule area from the main post office make it
impossible for the window clerks to see into the vestibule area
from their stations.  Id. at 42; Mrs. Baler Depo. at 28.

3

B.    <u>MAINTENANCE OF THE MEDFIELD POST OFFICE</u>

On September 11, 2002, Mr. Kelley worked as the Supervisor of Customer Service at the Medfield Post Office.  Kelley Depo. at 8.  In that role, Mr. Kelley was responsible for making sure the building was clean and safe.  <u>Id.</u> at 8.  Mr. Kelley took several measures to ensure that the vestibule area, and the rubber backed mat in particular, was well maintained.  <u>Id.</u> at 8, 16; Affidavit of Stephen J. Kelley ("Kelley Aff."), at ¶¶6-9, attached hereto as Exhibit F.  First, the post office contracted with Olympic Cleaning to clean the entire building, including the vestibule area, daily between 11:00 a.m. and 2:00 p.m.  Kelley Depo. at 8, 16.  Indeed, Olympic Cleaning vacuumed the rubber backed mat, and swept and washed the entire vestibule area daily at some time between 11:00 a.m. and 2:00 p.m.  <u>Id.</u> at 8; Kelley Aff. at ¶7.  The post office also contracted with an additional janitorial service, G&K, who replaced the rubber backed mat in the vestibule area with a new mat weekly.  Kelley Depo. at 16.  Finally, in addition to the daily cleaning by Olympic Cleaning and the weekly mat replacement by G&K, Mr. Kelley checked the vestibule area, and the rubber backed mat in particular, once or twice daily between 7:30 a.m. and 5:30 p.m.  <u>Id.</u> at 46; Kelley Aff. at ¶9.  As a result of Olympic Cleaning's and Mr. Kelley's daily routine, the post office checked the condition of the rubber backed mat two to three times per day.

C.    MR. AND MRS. BALER'S TESTIMONY

On September 11, 2002, the Plaintiff and her husband drove to the Medfield Post Office to purchase stamps, arriving at approximately 3:15 p.m.  Mrs. Baler Depo. at 10, 19.  The Plaintiff remembers the day as clear, however, her husband remembers the day as cloudy.  Id. at 10;  Deposition of Philip Baler ("Mr. Baler Depo."), at 9, attached hereto as Exhibit E. Mr. Baler, who was driving, parked the car and, within a minute, the Plaintiff entered the post office through the left vestibule door.  Mrs. Baler Depo. at 14, 16.  Mr. Baler stayed in the parked car.  Mr. Baler Depo. at 11.  The Plaintiff estimates that she entered the post office vestibule around 3:15 p.m.  Mrs. Baler Depo at 19; Plaintiff's Answers to Interrogatories of Defendant United States of America, No. 5, attached hereto as Exhibit G.  Her husband, however, estimates that the Plaintiff entered the post office vestibule between 2:30 p.m. and 3:00 p.m. Mr. Baler Depo. at 9.

The Plaintiff did not see anyone else in the vestibule area when she entered.  Mrs. Baler Depo. at 16.  As she passed through the vestibule, walking over both sets of floor mats without incident, the Plaintiff did not see any bubbles, bunches or wrinkles in the rubber backed mat.  Id.  In fact, the Plaintiff does not remember seeing the rubber backed mat at all as she entered the through the vestibule.  Id.

After walking over the rubber backed mat in the vestibule
without incident and then through the second set of doors, the
Plaintiff proceeded to a window clerk to purchase stamps.  Id. at
17.  The Plaintiff does not remember whether anyone else was in
front or behind her in line to the window clerk.  Id.  The
Plaintiff does not remember seeing anyone else enter or exit
through the vestibule while she purchased stamps.  Id.  The
Plaintiff estimates it took her approximately 15 to 20 minutes to
purchase stamps.  Id. at 19.  Her husband, however, estimates the
Plaintiff was in the post office only three to four minutes.  Mr.
Baler Depo. at 12.  Regardless, a maximum of twenty minutes
elapsed between the time the Plaintiff walked through the
vestibule, over the rubber backed mat, and the time she went to
exit the main post office.  Mrs. Baler Depo. at 19.

After completing her purchase, the Plaintiff re-entered the
vestibule through the glass doors of the main post office.  Id.
at 19.  Once she entered the vestibule, the Plaintiff walked
toward the same door she entered through to exit.  Id.  As she
walked toward the door through which she first entered, the
Plaintiff claims she looked ahead at the path in front of her as
she went.  Id. at 20, 21, 24.  The Plaintiff testified that she
noticed the black rubber backed mat rolled up into "medium" sized
bunches, elevated high enough for her to see.  Id. at 23.  In
fact, Mr. Baler testified that, when he entered the vestibule

6

after Mrs. Baler's alleged fall, the bunching in the mat was "obvious," standing at an inch or two high. Mr. Baler Depo at 16. Nonetheless, the Plaintiff did not step over or around the bunches, nor did she exit through the door on the opposite side of the vestibule. Mrs. Baler Depo. at 24. Instead, she testified that she attempted to walk over the bunch in the mat but tripped and fell. Id.

III. **ARGUMENT**

    A.   THE STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corporation, 63 F.3d 32, 36-37 (1st Cir. 1995)(quoting Fed. R. Civ. P. 56). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational fact finder to resolve the issue in favor or either side." National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the

nonmovant." <u>Smith v. F.W. Morse & Company, Inc.</u>, 76 F.3d 413, 428 (1st Cir. 1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." <u>Dow v. United Brotherhood of Carpenters</u>, 1 F.3d 56, 58 (1st Cir. 1993)(citation omitted). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." <u>McCarthy v. Northwest Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995).

B.    <u>THE STANDARD OF CARE UNDER MASSACHUSETTS LAW</u>

Under the Federal Tort Claims Act, "the federal government is liable 'in the same manner and to the same extent as a private individual under like circumstances.'" <u>Goldman v. United States</u>, 790 F.2d 181, 182-183 (1st Cir. 1986). It is "'the law of the place where the act or omission occurred' [which] must be applied." <u>Id.</u> at 183.

Under Massachusetts law, an owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises. <u>See</u> <u>e.g.</u> <u>Davis v. Westwood Group</u>, 420 Mass. 739, 653 N.E.2d 567 (Mass. 1995). This duty includes an obligation to "maintain[] . . . property in a reasonably safe condition in view

of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." <u>Mounsey v. Ellard</u>, 363 Mass. 693, 708, 297 N.E.2d 43, 52 (Mass. 1973).  It also includes a duty to "warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." <u>Davis</u>, 420 Mass. at 739, 652 N.E.2d at 567.  A landowner, however, is "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." <u>Lyon v. Morphew</u>, 424 Mass. 828, 833, 678 N.E.2d 1306, 1310 (Mass. 1997)(quoting <u>Toubiana v. Priestly</u>, 402 Mass. 84, 88, 520 N.E.2d 1307, 1310 (Mass. 1988)).

   C.   <u>THE PLAINTIFF CANNOT ESTABLISH THAT THE UNITED STATES CREATED, KNEW OF OR SHOULD HAVE KNOWN OF THIS ALLEGEDLY "DANGEROUS" CONDITION</u>

   Under Massachusetts law, to recover against the United States, the Plaintiff "must prove by a preponderance of the evidence that her injuries were proximately caused by an unsafe condition which the defendant created, had actual knowledge of, or should have discovered and corrected in the exercise of ordinary care." <u>Freitas v. Home Depot U.S.A., Inc.</u>, No. 9639, 2000 WL 910872, at *1 (Mass. App. Div. 2000)(citing <u>Oliveri v. Massachusetts Bay Transp. Auth.</u>, 292 N.E.2d 863, 363 Mass. 165 (Mass. 1973)).  The Plaintiff cannot meet this high burden of proof.  <u>See</u> <u>Welch v. Angelo's Supermarket, Inc.</u>, 27 Mass. App.

9

Ct. 1106, 534 N.E.2d 821, 822 (Mass. App. Ct. 1989) <u>Prestopino v.
Shaw's Supermarket, Inc.</u>, No. 1414, 2002 WL 207584, at *1 (Mass.
App. Div. 2002) (denying recovery because plaintiff failed to
demonstrate how and when mat became wrinkled); <u>Morse v. The Stop
& Shop Supermarket Company</u>, No. 9711, 2001 WL 865368, at *2
(Mass. App. Div. 2001); <u>Freitas</u>, 2000 WL 910872, at *1.

The Plaintiff cannot prove by a preponderance of the
evidence that the United States knew or should have been aware
that the placement of the mat in the vestibule could create a
dangerous condition.  Indeed, it is undisputed that the Plaintiff
is the only customer to ever trip, stumble or fall in the
Medfield Post Office as a result of the rubber backed mat.
Kelley Depo. at 26.  As such, the Plaintiff can produce no
evidence that the United States knew or should have known of the
alleged hazard created by the placement of the mat and, thus,
should have removed the rubber backed mat in the exercise of due
care.  <u>See</u> <u>Prestopino</u>, 2002 WL 207584, at *1; <u>Morse</u>, 2001 WL
865368, at *2; <u>Freitas</u>, 2000 WL 910872, at *1.

Moreover, the Plaintiff can offer no evidence that the
United States created or knew of any bunching in the mat on
September 11, 2002.  The Plaintiff testified she has "no idea"
how or when the mat became bunched on September 11, 2002.  Mrs.
Baler Depo. at 25.  Therefore, she cannot satisfy the high burden
of proof required to prove the United States created or knew of

10

any bunching in the mat on the day of her incident.  <u>See</u>
<u>Prestopino</u>, 2002 WL 207584, at *1; <u>Morse</u>, 2001 WL 865368, at *2;
<u>Freitas</u>, 2000 WL 910872, at *1.

Absent evidence that the United States created or actually
knew of any bunching in the floor mat, the Plaintiff's negligence
action may only stand if she is able to prove by a preponderance
of the evidence that the United States "should have discovered
and corrected [the defect] in the exercise of ordinary care."
<u>Oliveri</u>, 292 N.E.2d at 863; <u>Freitas</u>, 2000 WL 910872, at *1.  When
considering whether the United States should have known of the
bunch in the mat, "the decisive issues . . . [are] the length of
time the condition is present and the opportunity for discovery
on the facts of the case." <u>Deagle v. Great Atlantic & Pacific</u>
<u>Tea Company</u>, 343 Mass. 263, 265, 178 N.E.2d 286, 288 (Mass.
1961).

     1.   <u>The Plaintiff cannot establish that the alleged</u>
            <u>bunch in the mat existed for an unreasonable</u>
            <u>period of time</u>

The Plaintiff cannot establish that an unreasonable period
of time elapsed between the creation of any bunch in the floor
mat and her alleged incident.  <u>See Prestopino</u>, 2002 WL 207584, at
*1; <u>Morse</u>, 2001 WL 865368, at *2; <u>Freitas</u>, 2000 WL 910872, at *2.

Generally, a landowner is allotted a "reasonable" amount of
time to discover and repair a defect on his property.  <u>Freitas</u>,
2000 WL 910872, at *2 (citing <u>Gallager v. Stop and Shop</u>, 332

Mass. 560, 126 N.E.2d 190 (Mass. 1955)(finding the plaintiff failed to prove that a soggy, trampled piece of cardboard had been "in the location of her fall long enough for the defendant to have discovered and removed it").  The reasonableness of the length of time between "discovery and removal or warning of the dangerous condition is governed by the circumstances of each case."  Deagle, 343 Mass. at 265, 178 N.E.2d at 287 (denying recovery to the plaintiff because she failed to prove how long pine oil had been sitting on floor prior to her fall).  It is "incumbent upon the plaintiff to prove that the condition had existed for such a period of time to have afforded the defendant an adequate opportunity to have discovered and corrected it prior to the plaintiff's accident."  Polsinetti v. National Amusements, Inc., No. 9414, 1997 WL 606743, at *2 (Mass. App. Div. 1997)(citing Holding v. Toys "R" Us, No. 9410, 1997 WL 309211, at *1 (Mass. App. Div. 1997)).

When the Plaintiff first entered the vestibule she did not see any bunches in the rubber backed floor mat.  Mrs. Baler Depo. at 16.  Indeed, she walked over the floor mat without incident.  Id.  At most, twenty minutes elapsed between the time the Plaintiff entered the post office, walking over the rubber backed floor mat without incident, and the time she allegedly tripped.  Id. at 19.  Thus, even assuming the alleged bunch was created immediately after the Plaintiff first walked over the floor mat,

a maximum of twenty minutes elapsed between the creation of this
allegedly "dangerous" condition and the Plaintiff's incident.
Id.  Twenty minutes hardly gave the United States "adequate
opportunity" to discover and straiten out the mat.  See
Polsinetti, 1997 WL 606743, at *2.  As such, the Plaintiff's
evidence fails to establish by the preponderance of the evidence
that such an unreasonable amount of time elapsed that the United
States should have discovered and corrected the alleged bunch in
the mat.  See Freitas, 2000 WL 910872 at *2.

> 2.   The Plaintiff cannot establish that post office
>      employees should have discovered the alleged bunch
>      in the mat during the ordinary course of their
>      work

Furthermore, the Plaintiff cannot establish that the
defendant's employees should have discovered the alleged bunch in
the mat during the ordinary course of their work.  Massachusetts
does not impose a legal duty on the owner of a premises to
maintain constant inspection of all public entrances.  See
Deagle, 343 Mass. at 265, 178 N.E. 2d at 287; Morse, 2001 WL
865358, at *3 (finding presence of 35-40 employees in store at
time of accident, with 3 porters specifically assigned to inspect
portions of the store does not in its self establish that
defendant could have "discovered [spilled grapes] in time to
prevent plaintiff's fall"); Freitas, 2000 WL 910872, at *2
(finding presence of one employee in vicinity of accident not
adequate to infer defendant should have known of defect); but see

13

Gallager v. Stop & Shop, Inc., 332 Mass. 560, 126 N.E.2d 190
(Mass. 1955)(finding that position of store cashiers in clear
view of spilled ice cream illustrated that defendant should have
known of defect).  Instead, in addition to length of time, the
"reasonableness" of discovery is determined by considering "the
opportunity for discovery open to the defendant's employees by
reason of their number, their physical proximity to the condition
in question, and, in general, the likelihood that they would
become aware of the condition in the normal performance of their
duties."  Deagle, 343 Mass. at 265, 178 N.E.2d at 287.

    There were only two window clerks on duty September 11,
2002.  Kelley Depo. at 42, 43.  Moreover, the wall and doors
separating the vestibule area from the main post office made it
impossible for the window clerks to see into the vestibule area
from their work stations.  Kelley Depo. at 42.  Even the
Plaintiff noted she could not see the window clerks from the
floor after she fell.  Mrs. Baler Depo. at 28.  As such, any
argument that the post office employees should have discovered
and remedied any bunches in the floor mat during the course of
their ordinary work activities fails.  See Deagle, 343 Mass. at
265, 178 N.E.2d at 287; Morse, 2001 WL 865358, at *3;
Freitas,2000 WL 910872, at *2.

14

3.    <u>A finding of negligence in this case would impose
an "unreasonable standard of perfection" on the
United States</u>

Finally, any argument that the United States should have
discovered and corrected this alleged defect fails because a
finding of negligence would impose an "unreasonable standard of
perfection" on the United States.  "It is settled Massachusetts
law that the duty owed to the plaintiff [is] one of reasonable
care under all circumstances." <u>Brilliante v. United States</u>, 449
F. Supp 597, 599 (D. Mass. 1978).  Specifically, "[a] landowner .
. . is not obliged to supply a place of maximum safety."  <u>Id.</u>
(citing <u>Gadowski v. Union Oil of Boston</u>, 326 F.2d 524, 525 (1st
Cir. 1964)).  As such, a finding of negligence must not impose an
"unreasonable standard of perfection" on the United States.
<u>Goldman v. United States</u>, 790 F.2d 181, 184 (1st Cir. 1986)
(finding the United States not liable for failing to re-inspect a
plowed area the next morning for new ice formation).  Stated
another way, a finding for the Plaintiff must not result in the
"imposition of what would be tantamount to strict liability."
<u>Polsinetti</u>, 1997 WL 606743, at *2.

There is no evidence that the United States breached the
duty of reasonable care owed to the Plaintiff.  As a result of
Olympic Cleaning's and Mr. Kelley's daily routine, the condition
of the rubber backed mat was checked two to three times per day.
Kelley Depo. at 8, 46; Kelley Aff. at ¶¶6-7, 9.  Moreover,

15

because no other customer had ever tripped on rubber backed mat, the post office had no reason to believe the mat posed a danger on September 11, 2002. To require the Medfield Post Office to have done more with regard to the rubber back mat, undoubtedly would impose an "unreasonable standard of perfection." See Goldman, 790 F.2d at 184; Polsinetti, 1997 WL 606743, at *2. Indeed, a finding of negligence on the part of United States under the circumstances of this case would be "tantamount to [a finding of] strict liability." See Goldman, 790 F.2d at 184. Accordingly, because the Plaintiff cannot establish by the preponderance of the evidence that the United States created, knew of or should have known of this allegedly "dangerous" condition, her negligence claim fails as a matter of law.

D.    MASSACHUSETTS IMPOSES NO DUTY TO WARN OF OPEN AND OBVIOUS DANGERS

It is well established that "a landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence." O'Sullivan v. Shaw, 431 Mass. 201, 204, 726 N.E.2d 951, 954 (Mass. 2000)(citing Lyon v. Morphew, 424 Mass. 828, 678 N.E.2d 951 (Mass. 1997)); see also J.R. Nolan & L.J. Startorio, Tort Law § 226, at 89-90 (2d ed. 1989). Thus, "[w]hen the plaintiff can see danger, and there is a reasonably safe and obvious alternative route, there is no liability." Goldman, 790 F.2d at 183.

16

The Plaintiff and her husband are no different than a person of "ordinary intelligence," and, notably, both easily saw the alleged bunch in the mat.  The Plaintiff is sixty-five years old and able to think clearly.  Mrs. Baler Depo at 7, 8.  While the Plaintiff takes a number of different medications for physical ailments, none affects her memory or causes dizziness.  Id. at 12, 13.  Mr. Baler is sixty-seven years old, and still employed as a Financial Consultant.  Mr. Baler Depo. at 7.  Mr. Baler stated unequivocally that the bunches in the floor mat were "obvious," estimating they were one to two inches high.  Mr. Baler Depo. at 16.  In fact, the Plaintiff testified that she saw the bunch in the floor mat before she fell, and even described the bunch as "medium" height and easily visible.  Mrs. Baler Depo. at 23.  As such, no rational fact finder could that the Plaintiff was unaware of the alleged bunching in the mat before tripping on it.  See Toubiana, 520 N.E.2d at 1310.  Thus, the Plaintiff's own knowledge of the alleged defect prevents her from advancing an argument that the United States should have warned her of this allegedly "dangerous" condition and rebuts any presumption that the Plaintiff acted with due care as she exited the post office.  See Brillante, 449 F. Supp. at 597; Toubiana, 520 N.E.2d at 1310.  Accordingly, the Plaintiff's negligence action fails as a matter of law.

17

**CONCLUSION**

Accordingly, for the reasons articulated above, the claims the United States should be dismissed.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                                By:     /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney
                                        Moakley Federal Courthouse
                                        One Courthouse Way, Suite 9200
                                        Boston, MA 02210
                                        (617) 748-3100

Dated: May 3, 2005

**CERTIFICATION UNDER L.R. 7.1**

I certify that in accordance with Local Rule 7.1, on May 3, 2005, I have conferred with Plaintiff's counsel and have attempted in good faith to resolve the issues addressed in this Motion.

                                        /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk,  ss.                           Boston, Massachusetts
                                        May 3, 2005

I certify that on May 3, 2005, I caused a copy of the foregoing Motion to be served on Plaintiff's Attorney, Jeffrey N. Roy, Ravech & Roy, P.C., One Exeter Plaza, 699 Boylston Street, Boston, MA 02116, by first class mail, Postage pre-paid.

                                        /s/ Damian W. Wilmot
                                        DAMIAN W. WILMOT
                                        Assistant U.S. Attorney

18