```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

_____
                                    )
CYNTHIA BALER                       )
                                    )
     Plaintiff,                     )
                                    )      C.A. 04-11885-JLA
v.                                  )
                                    )
UNITED STATES OF AMERICA,           )
                                    )
     Defendant.                     )
_____)

**DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED**

1. Plaintiff, Cynthia Baler, brings a negligence claim against the Government under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, et seq. Complaint ¶1. Plaintiff alleges that on September 11, 2002, she fell at the Medfield Post Office, located in Medfield, Massachusetts, because of the Government's negligence.

2. Customers enter the Medfield Post Office through a vestibule that faces Front Street in Medfield. Deposition of Stephen J. Kelley ("Kelly Depo."), at 10, 11, attached to Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Memorandum of Law") as Exhibit A.

3. The vestibule is rectangular, and protrudes out from the rest of the building. Id.

4. There are two entrances to the vestibule -- one entrance is on the right side and one entrance is on the left side. Id.

5. On September 11, 2002, there were two types of floor mats

        inside the vestibule. Kelley Depo. at 18; Photograph of Vestibule, attached to Defendant's Memorandum of Law as Exhibit B.

6. On September 11, 2002, there were two stone, slatted mats built into the vestibule floor which were located immediately inside vestibule and directly in front of each entrance to the vestibule. Kelley Depo. at 18. These mats are rough and are used to scrape dirt off of customer's shoes. Id. at 47.

7. On September 11, 2002, the second type of mat was a large black removable mat that lay between the two slated mats and in front of a second set of doors leading into the main post office. Id. at 20. This mat had a rubber back and bristled front. Id. Customers used the bristles to further wipe their shoes off before entering the main post office. Id. The more absorbent rubber backed mat also prevented customers from slipping and falling on a slick floor. Id. at 25, 47.

8. Both mats worked effectively to keep the vestibule area safe for customers passing through. Id. at 25, 26.

9. Since the Medfield Post Office opened in 1998, no one other than the Plaintiff ever stumbled, tripped, or fell in the post office vestibule as a result of the mats placed there, before or after the Plaintiff's incident. Id. at 8, 26.

10. Once inside the vestibule, customers must pass through a second set of glass doors to enter the "main" post office. Deposition of Cynthia Baler ("Mrs. Baler Depo."), at 14, 15, attached to Defendant's Memorandum of Law as Exhibit C; Exhibit B; Plaintiff's March 9, 2005, Drawing of Medfield Post Office Vestibule, attached to Defendant's Memorandum of Law as Exhibit D.

11. In the main post office, past both sets of doors, customers may check post office boxes and/ or purchase items from window clerks. Kelley Depo. at 11.

12. The wall and doors separating the vestibule area from the main post office make it impossible for the window clerks to see into the vestibule area from their stations. Id. at 42; Mrs. Baler Depo. at 28.

13. Plaintiff is sixty-five years old and able to think clearly. Mrs. Baler Depo at 7, 8. Although she takes a number of different medications for physical ailments, none affect her memory or cause dizziness. Id. at 12, 13.

14. Phillip Baler, the Plaintiff's husband, is sixty-seven years old, and is employed as a Financial Consultant. Deposition of Philip Baler ("Mr. Baler Depo."), at 7, attached to Defendant's Memorandum of Law as Exhibit E.

15. On September 11, 2002, Stephen Kelley worked as the Supervisor of Customer Service at the Medfield Post Office.

Kelley Depo. at 8. In that role, Mr. Kelley was responsible for making sure the building was clean and safe. Id. at 8.

16. Mr. Kelley is currently the Postmaster of the Medfield Post Office. The person who was Postmaster of the Medfield Post Office on September 11, 2002, is now deceased. Id. at 7, 40.

17. The Post Office contracted with Olympic Cleaning to clean the entire building, including the vestibule area, daily between 11:00 a.m. and 2:00 p.m. Id. at 8.

18. Every day, Olympic Cleaning vacuumed the rubber backed mat, and swept and washed the entire vestibule area between 11:00 a.m. and 2:00 p.m. Kelley Depo. at 8; Affidavit of Stephen J. Kelley ("Kelley Aff."), at ¶7, attached to Defendant's Memorandum of Law as Exhibit F.

19. The Post Office contracted with G&K, a janitorial service, who replaced the rubber backed mat in the vestibule area with a new mat weekly. Kelley Depo. at 16.

20. Mr. Kelley checked the vestibule area, and the rubber backed mat in particular, once or twice daily between 7:30 a.m. and 5:30 p.m. Id. at 46; Kelley Aff. at ¶9.

21. On September 11, 2002, the Plaintiff and Mr. Baler drove to the Medfield Post Office to purchase stamps, arriving at approximately 3:15 p.m. Mrs. Baler Depo. at 10, 19.

22. Plaintiff remembers September 11, 2002, as clear. Id. at

10.

23. Mr. Baler remembers September 11, 2002, as cloudy.  Mr. Baler Depo. at 9.

24. Mr. Baler, who was driving, parked the car and, within a minute, the Plaintiff entered the post office through the left vestibule door.  Mrs. Baler Depo. at 14, 16.

25. Mr. Baler stayed in the parked car.  Mr. Baler Depo. at 11.

26. The Plaintiff estimates that she entered the post office vestibule around 3:15 p.m.  Mrs. Baler Depo at 19; Plaintiff's Answers to Interrogatories of Defendant United States of America, No. 5, attached to Defendant's Memorandum of Law as Exhibit G.

27. Mr. Baler estimates that the Plaintiff entered the post office vestibule between 2:30 p.m. and 3:00 p.m.  Mr. Baler Depo. at 9.

28. Plaintiff did not see anyone else in the vestibule area when she entered.  Mrs. Baler Depo. at 16.

29. As Plaintiff passed through the vestibule, walking over both sets of floor mats without incident, the Plaintiff did not see any bubbles, bunches or wrinkles in the rubber backed mat.  Id.

30. Plaintiff does not remember seeing the rubber backed mat at all as she entered the through the vestibule.  Id.

31. After walking over the rubber backed mat in the vestibule

without incident and then through the second set of doors, the Plaintiff proceeded to a window clerk to purchase stamps. Id. at 17.

32. Plaintiff does not remember whether anyone else was in front or behind her in line to the window clerk. Id.

33. Plaintiff does not remember seeing anyone else enter or exit through the vestibule while she purchased stamps. Id.

34. Plaintiff estimates it took her approximately 15 to 20 minutes to purchase stamps. Id. at 19.

35. Mr. Baler estimates that Plaintiff was in the post office only three to four minutes. Mr. Baler Depo. at 12.

36. After completing her purchase, the Plaintiff re-entered the vestibule through the glass doors of the main post office. Mrs. Baler Depo. at 19.

37. Once she re-entered the vestibule, the Plaintiff walked toward the same door she entered through to exit. Id. at 19.

38. As she walked toward the door through which she first entered, the Plaintiff claims she looked ahead at the path in front of her as she went. Id. at 20, 21, 24.

39. Plaintiff testified that she noticed the black rubber backed mat rolled up into "medium" sized bunches, elevated high enough for her to see. Id. at 23.

40. Mr. Baler testified that, when he entered the vestibule

after Mrs. Baler's alleged fall, the bunching in the mat was "obvious," standing at an inch or two high.  Mr. Baler Depo at 16.

41. Plaintiff did not step over or around the bunches, nor did she exit through the door on the opposite side of the vestibule.  Mrs. Baler Depo. at 24.

42. Plaintiff testified that she attempted to walk over the bunch in the mat but tripped and fell.  Id.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                     By:  /s/ Damian W. Wilmot
                              DAMIAN W. WILMOT
                              Assistant U.S. Attorney
                              Moakley Federal Courthouse
                              One Courthouse Way, Suite 9200
                              Boston, MA 02210
                              (617) 748-3100

Dated: May 3, 2005