UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYNTHIA BALER,<br>      Plaintiff, | )<br>)<br>) |
| vs. | )   C.A. No. 04-11885-JLA<br>) |
| UNITED STATES OF AMERICA,<br>      Defendant. | )<br>)<br>) |

**PLAINTIFF CYNTHIA BALER'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Statement of Facts*

On September 11, 2002, in the mid-afternoon, plaintiff Cynthia Baler fell in the foyer or vestibule of the Medfield Post office. Plaintiffs Answers to Interrogatories, numbers 2 and 5, attached hereto as Exhibit A. Just prior to the fall, Mrs. Baler had bought some stamps and as she was leaving the post office, she walked and tripped over a bunched up rug which was on the floor of the vestibule. Id. Mrs. Baler did not see the bunching, bubbles or bumps in the mat until she was in the act of tripping over them. Cynthia Baler deposition, pages 23-24, Exhibit B. As she testified, she saw them as she was walking and could not stop her fall. Id.

As noted in defendant's submission, the Medfield Post Office had two types of floor mats inside the vestibule. These two types of mats are shown quite clearly in the photograph attached hereto as Exhibit C. One mat was a slotted mat permanently affixed to the vestibule floor. The other was a movable black rubber mat which was positioned as shown in the photograph attached hereto as Exhibit C. The photograph also shows the general layout of the mats and doorways in the vestibule. It also shows the operation of the doorways at the Medfield Post Office, where one door swings into the building, and the other swings out into the vestibule. Stephen Kelley also

2

confirmed that the doorways operated in this manner. Deposition of Stephen Kelley, pages 22-23, Exhibit D). As demonstrated by the photographs, the doorway which swings out into the vestibule goes into a portion of the movable black mat on the floor. It is a logical inference from the photographs that the constant swinging of the doorway into the mat is enough to cause rippling and bunching such as that experienced by Mrs. Baler. The defendant should have known that this swinging door, in conjunction with pedestrian foot traffic, would cause this movable mat to ripple or bunch, creating a dangerous condition on the premises.[1]

Shortly after the incident involving Mrs. Baler, the defendant obtained photographs of the vestibule and mat at issue. These photographs are attached hereto as Exhibit E. The photographs obtained and produced by the defendant clearly show bunching or rippling in the mat at issue in this case. Kelley deposition, page 24, Exhibit D. Mrs. Baler's husband Phil described the bunching as a ripple right across the rug. Phil Baler deposition, page 15, Exhibit F. As he testified, part of the rug was lifted at one end and it just rolled right across the rug. Id. It was a few inches high as he observed. Id., pages 15-16.

Stephen Kelley testified that defendant was responsible to make sure the building was clean and free of unsafe acts. Kelley deposition, pages 7-8, Exhibit D. These oversight responsibilities also pertained to the vestibule area at issue in this case. Id., page 14. Thus,

---

[1] There is also been a suggestion that the defendant had a cleaning crew in the vestibule on a daily basis between 11 a.m. and 2 p.m. This cleaning crew was an agent of the defendant, and it also can be inferred that this crew may have bunched up the mat in the act of cleaning in the area. This testimony about daily cleaning is suspect, however. In his deposition, Stephen Kelley testified that Olympic Cleaning would come into the building anywhere between 11 and one. Kelley deposition, page 19. He never testified about when they would begin cleaning the vestibule area, or how long they were in the facility. In his affidavit, he contends that they swept and washed the entire vestibule area between 11 a.m. and 2 p.m.. That is somewhat inconsistent with his prior deposition testimony and is also troublesome for the defendant. That is, it does not seem to make sense to have the vestibule area cleaned and washed in the middle of the day, at presumably one of the busiest time periods for a post office. Moreover, if the floors were washed and wet at this time, this would present another dangerous situation for customers.

3

defendant or its agents were responsible for the placement of the movable mat in the vestibule of the premises at issue in this case. In addition, defendant was responsible for creating this dangerous condition by placing the rubber mat in the path of the swinging door which caused it to ripple or buckle. Moreover, Stephen Kelley testified that the vestibule is inspected several times during the day by the defendant or its agents. Kelley deposition, page 46, Exhibit D. Accordingly, defendant should have observed the rippling or bunching of the mat during these inspections. Had defendant properly conducted its inspections of the vestibule area, it could have taken remedial action, including but not limited to, the removal of the mat from the vestibule to eliminate the dangerous condition.

Shortly after the fall by Mrs. Baler, Stephen Kelley completed an accident investigation worksheet (PS form 1700). Kelley deposition, page 37, Exhibit D; Form attached as Exhibit G. This PS form 1700 is a document that is kept in the ordinary course of the post office's business. On the form PS 1700 referred to above, Mr. Kelley reported that Mrs. Baler caught her foot on the floor rug at the Medfield Post Office. On the PS form 1700, item 44 asks the reporter for his recommendation as to whether the claim should be allowed, if filed ("in your opinion"). In completing the form, Kelley checked "yes". Id. The court can certainly infer that Mr. Kelley recognized at the time he completed this report that the defendant was responsible for Mrs. Baler's fall.

In its submission, defendant makes the assertion, based solely on the testimony of Stephen Kelley, that since a 1998, "no one other than the plaintiff ever stumbled, tripped, or fell in the post office of vestibule as a result of the mats placed there, before or after the plaintiff's incident." Defendant's memorandum of law, page 3. However, Stephen Kelley's knowledge of

4

prior incidents is limited in that he has only worked at the Medfield Post Office since 2000. Kelley deposition, pages 4-5, Exhibit D. Moreover, the mats were only in place until October 2002, when they were removed at the direction of Stephen Kelley. Kelley deposition, page 16. Accordingly, defendant's assertion must be limited to a closed period of less than two years.

The mats which were located in the vestibule at the time of plaintiff's fall were removed shortly after plaintiff's incident at the direction of Stephen Kelley. Kelley deposition, page 16 Exhibit D. Kelley eliminated four of the seven mats in use at the Medfield Post Office in October 2002. Id., pages 21-22. He eliminated the ones he really felt he "didn't need as much." The court can infer from this testimony, that contrary to the assertions set forth in defendant's concise statement, the black rubber mat was not there to keep the vestibule area safe for customers. As demonstrated by the incident involving Ms. Baler, the vestibule was less safe with the mat present, and removing it was a more appropriate precaution for the safety of customers.

*Argument*

A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court should grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of proving that there is no genuine issue of material fact on every relevant issue raised by the pleadings falls upon the defendant. The party seeking summary judgment always bears initial responsibility of informing the District Court of basis for its motions, and identifying those portions of pleading, depositions, answers to interrogatories, and

5

admissions on file together with affidavits, if any, which it believes will demonstrate absence of any genuine issue of material fact. *Celotex Corp. v Catrett,* 477 US 317 (1986).

In resolving summary judgment motion, court may not undertake to evaluate credibility of witnesses, weigh evidence, or resolve factual disputes; so long as evidence in record is such that a reasonable factfinder drawing all inferences in favor of nonmoving party could arrive at verdict in that party's favor, court must deny motion. *International Shortstop, Inc. v Rally's, Inc.,* 939 F2d 1257 (5th Cir. 1991). Instead, in drawing inferences from the affidavits, depositions, exhibits or other material, the appellate court must view them in the light most favorable to the party resisting the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). If a mere "scintilla" of controversy of fact exists, summary judgment is not an appropriate motion to allow. *Reagan v. Commonwealth Theatres of Puerto Rico, Inc., et al.,* 300 F. Supp. 676 (D.C.P.R. 1969).

B. *Duty of Care*

An owner or occupier of land owes a duty to all lawful visitors, such as Ms. Baler, to exercise reasonable care in all the circumstances. *Mounsey v. Ellard,* 363 Mass. 693 (1973). "The 'reasonable care in all the circumstances' standard allows the jury to determine what burdens of care are reasonable in light of the relative expense and difficulty they impose on the owner or occupier as weighed against the probability and seriousness of the foreseeable harm to others." *Id.* at 709. The law in Massachusetts is well settled that a business owner has a duty of ordinary care to maintain its business premises in a reasonably safe condition and to warn against any danger of which his patrons are unaware, but which is known or should be known to him. *Luz v. Stop & Shop, Inc. of Peabody,* 348 Mass. 198, 203 (1964); *Altman v. Barron's Inc.,* 343

6

Mass. 43, 46-47, (1961). A defendant-owner may be held liable in negligence for a breach of such duty only when the plaintiff's injuries were proximately caused by a dangerous or defective condition on the premises which the defendant either created, had actual knowledge of, or should have discovered and remedied in the exercise of due care. *Oliveri v. Massachusetts Bay Transp. Auth.*, 363 Mass. 165, 167 (1973); *Deagle v. Great Atlantic & Pacific Tea Co.*, 343 Mass. 263, 265 (1961); *Sahagan v. Commonwealth*, 25 Mass. App. Ct. 953 (1987); *Kirmes v. The Stop & Shop Companies, Inc.*, 1992 Mass. App. Div. 196, 197-198.

These duties contemplate inspections for and discovery of hazardous conditions, followed by the taking of such protective measures as are necessary to guard against dangers to lawful visitors known or that should be known by the storeowner. The appropriate protective measure in most cases is elimination of the hazard, as by removing the offending object that has found its way onto the floor. Proof of the defendant's negligence may consist of showing that the defendant caused the offending substance to be at the place of injury, or if someone else caused it to be there, that the defendant knew or should have known of its presence and failed within a reasonable time to remove it. *Wexler v. Stanelsky Memorial Chapel of Brookline, Inc.*, 2 Mass. App. Ct. 750, 750-753 (1975).

Examining the evidence in the light most favorable to the plaintiff, it is eminently clear that sufficient evidence has been presented by Ms. Baler that defendant was negligent in conducting its business operation at the Medfield Post Office. To begin, defendant or its agents were responsible for the placement of the movable mat in the vestibule of the premises at issue in this case. In addition, defendant was responsible for creating this dangerous condition by placing the movable rubber mat in the path of the swinging door which caused it to ripple or buckle.

7

Also, given that defendant contends that the vestibule is inspected several times during the day, it should have observed the rippling or bunching of the mat on those occasions. Had defendant properly conducted its inspections of the vestibule area, it could have taken remedial action, including but not limited to, the removal of the mat from the vestibule to eliminate the dangerous condition.

In a negligence case, the critical question is whether the defendant has failed to act as a reasonably prudent person could have acted in all the circumstances, "including the likelihood of injury to others, the seriousness of the injury and the burden of avoiding the risk." *Mounsey v. Ellard*, 363 Mass. 693, 708 (1973). Such circumstances include the nature of the establishment and the nature of the clientele known to visit such premises. *Upham v. Chateau DeVille Dinner Theatre*, 380 Mass. 350, 355 (1980). "The evaluation of such circumstantial evidence is frequently, and unavoidably, a difficult and hairsplitting task." *Oliveri v. MBTA*, 363 Mass. 165, 168 (1973). This circumstantial inquiry is ordinarily a factual determination reserved to the fact finder. The sea of facts and circumstances upon which liability can be predicated is endless. For this reason, it is unwise to turn these factual determinations into rules of law. Instead, it is best to leave the determination of reasonableness to the factfinder. Every case must stand or fall on the factual circumstances surrounding the accident as determined by the fact finder.

In this case, under negligence principles, liability can be predicated upon any or all of the following facts or circumstances:

    a.    The proximity of swinging doors to a movable mat on the floor;

    b.    The foot traffic and other activities in the vestibule area which occurred on a daily basis which could cause the mat to get rippled or bunched;

8

    c.    Defendant failed to adequately inspect the area where Ms. Baler fell, and the employees who allegedly inspected the vestibule failed to discover and remedy the defective condition; and/or

    d.    Given the nature of defendant's business, greater precautions should have been taken to recognize and eliminate dangerous conditions on the premises.

In several cases, the Massachusetts courts have considered negligence cases based upon defective conditions arising from mats on floors. In *Mulloy v. Kay Jewelry Co.*, 289 Mass. 264 (1935), the court considered the following facts: plaintiff slipped and fell on a rubber mat that extended from the door to the sidewalk; that it was a corrugated mat fourteen feet long and three feet wide; that she slipped and fell on the mat two and one half or three feet from the sidewalk end; that when she got up she noted the place where she slipped; that the corrugation or ribs on the surface of the mat at the end where she slipped were worn smooth across the last three feet of the mat. In ruling against a summary judgment in that case, the court noted:

> We are of opinion that the evidence justified a finding that the mat by constant travel over it had become smooth and slippery at the place where the plaintiff fell, and that in the exercise of due care the defendant by proper inspection could have discovered its condition. These were questions of fact for the trial judge to determine. The cases are governed in principle by *Moynihan v. City of Holyoke*, 193 Mass. 26, 78 N. E. 742, *Bennett v. Jordan Marsh Co.*, 216 Mass. 550, 104 N. E. 479, *Cook v. Boston Elevated Railway Co.*, 256 Mass. 27, 152 N. E. 58, *DuBois v. Boston Elevated Railway Co.*, 276 Mass. 98, 100, 176 N. E. 920, *Solomon v. Boston Elevated Railway Co.*, 276 Mass. 139, 141, 143, 176 N. E. 810, *Shrigley v. Boston Symphony Orchestra, Inc.*, (Mass.) 191 N. E. 420.

*Id.* at .

In *Tovey v. G. E. Lothrop Theatres Co.*, 288 Mass. 346 (1934), the court considered a case where the cause of plaintiff's fall was the condition of the tapestry carpet at the head of the aisle. It was threadbare, ragged, worn and torn, and for the width of fifteen or eighteen inches

was "lapped" or "rolled" over or "curled up" so that it projected one and a half or two inches above the level of the floor. The carpet had been in use at that place for about three years, and in that period an average of two hundred people went over the aisle daily. When laid the carpet was nailed on both sides of the aisle and under the risers of the steps. The *Tovey* court noted that a diligent proprietor would have known of its existence and would have foreseen that such a condition at the head of a sloping aisle in a darkened theater would be likely to result in injury to an invitee who under the direction of an employee was proceeding to make the descent. *Id.* The court specifically found that it could not be held as matter of law that there was no evidence of negligence on the part of the defendant. *Id.*

The plaintiff in *Waldo v. A. H. Phillips, Inc.*, 299 Mass. 349 (1938) testified that the "rubber mat was worn on the surface, and the part of the mat that was lying on the tile was smooth and worn," and that the tile underneath the mat was "slippery, shiny and worn." In that case, the court found that the evidence warranted a finding that the combination of an inclined "step or platform" with a surface of worn and slippery tile and a rubber mat thereon, worn on top and smooth and worn on its under side, created a dangerous condition which the defendant, by a proper inspection, could and, in the exercise of reasonable care, ought to have discovered. *Id.*

Defendant relies upon the case of *Prestopino v. Shaw's Supermarkets, Inc.*, No. 1414, 2002 WL 207584, a case arising from the Appellate Division of the District Court in Massachusetts, in support of its claim that summary judgment is appropriate here. That case is clearly distinguishable from the facts here, and reliance on that case is misplaced. In *Prestopino*, there was no evidence as to how long the condition had existed before the fall or what had caused the condition to occur. In this case, however, we have clear photographic evidence of a door

10

which swung constantly into the mat, and which clearly caused it to bunch up and wrinkle. Moreover, this condition was actually created by the defendant, and/or its agents, by placing a movable carpet in an area where it could be repeatedly hit by the swinging door and was subjected to pedestrian traffic and other activities. When the dangerous condition is created by the defendant, the length of time that the condition existed is less significant. More importantly, in this case, there is evidence that this very area was inspected several times daily by the defendant, and should have been detected.

Additionally, the length of time allowed to a defendant to identify a defective condition is governed by the circumstances of each case and to a large extent depends on "the opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties. *Oliveri v. MBTA*, 363 Mass. 165, 167 (1973). The determination of these circumstances is a matter of fact-finding, and should not be determined as a matter of law. Inferences drawn from circumstantial evidence play a large role in proving negligence. For instance, the appearance of the offending object may permit an inference that it remained on the premises for an unreasonable period of time. *Anjou v. Boston Elevated Rail Co.*, 208 Mass. 273, 274 (1911). The cases where the plaintiff succeeds when attempting to establish the time element by circumstantial evidence fall into three categories:

    a.    Cases where the peculiar nature of the foreign substance as described supported an inference that the defendant's employees either created or knew or should have known of the condition. (e.g., *Young v. Food Fair, Inc.*, 337 Mass. 323; *Rossley v. S.S. Kresge Co.*, 339 Mass 654);

11

    b.    Cases where there was particularly favorable evidence for the plaintiff as to the location of duty stations of the defendant's employees. (e.g., *Foley v. F.W. Woolworth Co.*, 293 Mass. 232, 234; *Gallagher v Stop & Shop, Inc.*, 332 Mass. 560); and

    c.    Some cases where organic matter was involved *Anjou v. Boston Elevated Railway*, 208 Mass. 273 (1911).

In these cases where the plaintiff has succeeded, the circumstantial evidence, and the description of the foreign substance were such that the application by the fact finder of principles within common knowledge was sufficient to establish a time element. *Oliveri v. Mass. Bay Transportation Authority*, 363 Mass. 165, 170 (1973).

The length of time a dangerous condition must exist before notice of the condition is chargeable varies according to the circumstances. A stop watch reading alone cannot resolve the issue. One must take into account the nature of the condition complained of, probable consequences, opportunities available for discovery, efforts required and foresight that persons of reasonable prudence could exercise under similar circumstances. All of these factors must be considered. *Safeway Stores v. Lucas*, 410 F.2d 603. In this case, the swinging door over the mat had been in existence since 1998. The vestibule area is allegedly inspected by defendant several times daily. Accordingly, defendant had ample opportunity to recognize and eliminate the hazard.

    C. *Open and Obvious no Defense Here*

The defendant's contention that the bunched up carpet was "open and obvious" to Mrs. Baler, hence relieving it of a duty to warn is without merit. In the case of *O'Sullivan v. Shaw*, 431 Mass. 201 (2000), the "open and obvious doctrine" is discussed in great detail. At pages 205-206 the Court stated:

12

> Whether a danger is open and obvious has to do with the duty of the defendant, not the negligence of the plaintiff.' Rather than evaluating a particular plaintiff's subjective reasonableness or unreasonableness in encountering a known hazard, the inquiry is an objective one that focuses, instead, on the reasonableness of the defendant's conduct: it presumes a plaintiff's exercising reasonable care for his own safety and asks whether the dangerous condition was, objectively speaking, so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it and, therefore, that any further warning would be superfluous.

In the present case, a carpet, although visible, is not necessarily dangerous; one does not expect to be tripped by a carpet. However, the carpet in this case was subjected to conditions that would not be readily apparent to a customer such as Mrs. Baler. Indeed, her attention in this post office was drawn to signs and other objects above the floor. She had no reason to suspect a bunched up carpet. Moreover, Mrs' Baler testified that she did not see the bunching until she was in the process of falling.

*Conclusion*

In light of the foregoing, defendant's motion for summary judgment should be denied.

                                        Plaintiff,
                                        By her attorneys,

                                        Jeffrey N. Roy (BBO #548618)
                                        RAVECH & ROY, P.C.
                                        One Exeter Plaza
                                        699 Boylston Street
                                        Boston, MA 02116
                                        (617) 303-0500

DATED:    May 17, 2005

## CERTIFICATE OF SERVICE

I, Jeffrey N. Roy, hereby certify that on May 17, 2005, I served a copy of the foregoing document on the within named defendant by causing a copy of same to be:

☐ Served with the summons and complaint;

☒ Mailed, postage prepaid, to all counsel of record;

☐ Hand-delivered.

_____
Jeffrey N. Roy