UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. #04-CV-11885-JLA

CYNTHIA BALER
Plaintiff

V.

UNITED STATES OF AMERICA,
Defendants

**ORDER ON**

**UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT
(Docket # 11)**

ALEXANDER, M.J.

On August 30, 2004, plaintiff Cynthia Baler filed a claim against defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, based on an incident that occurred at the Medfield, Massachusetts, post office. Ms. Baler alleges that injuries that she sustained after falling in the post office resulted from the government's negligence. The government, in turn, filed a motion for summary judgment. The Court held a hearing on the motion on June 9, 2005. After careful consideration of the parties'

asseverations, both oral and written, and for the reasons set forth more fully below, the Court ALLOWS the defendant's motion for summary judgment.[1]

**BACKGROUND**

On September 11, 2002, Ms. Baler visited the Medfield post office to purchase stamps. (Deposition of Cynthia Baler ("Ms. Baler Depo.") at 10, 11) While exiting the building, she tripped and fell on a mat located in the post office vestibule ("the vestibule"), sustaining injuries to her shoulder and knee and bruising her legs and head. (Id. at 24; Plaintiff's Answers to Interrogatories ("Pl.'s Answers to Interrogs."), Nos. 2-3, 10)

At the time of the incident, there were two types of mats located in the post office vestibule: slatted, stone, built-in mats ("the built-in mats"), located immediately inside and directly in front of the vestibule entrance; and a rubber-backed, bristle-topped, removable mat ("the removable mat"), located between the built-in mats and in front of a second set of doors leading from the vestibule to the main area of the post office. (Deposition of Stephen J. Kelley ("Kelley Depo.") at 18, 20, 47) The built-in mats were used by customers to scrape dirt from their

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge, and the case was therefore transferred to this Court for all purposes on December 16, 2004.

2

shoes. (Kelley Depo. at 12) The removable mat was meant to do the same, as well as prevent customers from slipping and falling on a slick floor. (Id. at 12, 25-26)

When Ms. Baler entered the vestibule, she did not notice any ripples or bunches in the mats. (Ms. Baler Depo. at 16) According to her estimates, she completed her business in the post office in a period of fifteen to twenty minutes. (Id. at 19) Her husband, however, who was waiting for her outside in their car, estimated that it took her approximately three to four minutes. (Deposition of Philip Baler ("Mr. Baler Depo.") at 12) As she passed back through the vestibule to exit the post office, she noticed "medium" sized bunches in the removable mat. (Ms. Baler Depo. at 23) She did not notice the bunches, however, in time to stop herself from tripping on the mat and falling to the ground. (Id. at 24)

According to Stephen Kelley, then the supervisor of the Medfield post office, Olympic Cleaning cleaned the post office daily between 11 a.m. and 2 p.m., including sweeping and washing the vestibule and vacuuming the mats. (Affidavit of Stephen J. Kelley ("Kelley Aff.") at ¶¶ 6-7) Additionally, G&K janitorial service replaced the removable mat with a new mat on a weekly basis. (Id. at ¶ 8) Mr. Kelley also checked the vestibule, and the removable mat in particular, once or twice a day. (Id. at ¶ 9) During the two years in which Mr. Kelley was

supervisor, no person other than Ms. Baler ever reported stumbling, tripping, or falling over the removable mats. (Kelley Depo. at 26)

## ANALYSIS

**The Summary Judgment Standard**

The parameters in which this Court considers a motion for summary judgment are well-defined and familiar. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (internal citations and quotations omitted). The party moving for summary judgment bears responsibility for showing those portions of the discovery record that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

After the moving party has fulfilled this obligation, the burden shifts to the non-moving party to demonstrate that a trier of fact reasonably could find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25); Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co., 801

F.2d 536, 537 (1st Cir. 1986) (describing the non-moving party's burden as one of demonstrating that there is a need for further exploration of the facts). A party opposing a motion for summary judgment may not rest on mere allegations or denials, but rather, must show that specific facts illustrate a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In reviewing a motion for summary judgment and the materials offered to support the motion, the role of the Court is not to engage in an analysis of whose evidence is more compelling or credible. Cetronics Fin. Corp. v. El Conquistador Hotel Corp., 573 F.2d 779, 782 (2d Cir. 1978); Peckarsky v. Am. Broad. Co., Inc., 603 F. Supp. 688, 692 (D.D.C. 1984). "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence." Anderson, 477 U.S. at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255. See also Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 71-72 (D. Mass. 1998); Barretto-Rivera v. Medina-Vargas, 168 F.3d 42, 47 (1st Cir. 1999) ("speculation adverse to the nonmoving party is inappropriate on a motion for summary judgment"); Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (in reviewing motions for summary judgment, "evidence of the nonmovant is to be believed, and all justifiable

5

inferences are to be drawn in his favor"). With these parameters in mind, the Court turns to the parties assertions.

**Standard of Due Care**

Claims brought against the government under the FTCA create liability "in the same manner and to the same extent as a private individual under like circumstances . . . ." Goldman v. United States, 790 F.2d 181, 182 (1st Cir. 1986) (quoting 28 U.S.C. § 2674). The law to be applied is "the law of the place where the act or omission occurred." Id. at 183 (quoting 28 U.S.C. § 1346(b)). Therefore, Ms. Baler's claim arising from the incident at the Medfield post office will be determined under Massachusetts law.

Under Massachusetts law, a landowner has a duty to act in a reasonable manner to provide a reasonably safe environment for visitors. Mounsey v. Ellard, 363 Mass. 693, 708, 297 N.E.2d 43, 52 (1973). Imposing a higher duty "'would be to establish an unreasonable standard of perfection rather than to enforce the recognized standard of due care . . . .'" Goldman, 790 F.2d at 184 (citations omitted). Furthermore, this duty "does not make landowners and occupiers insurers of their property nor does it impose unreasonable burdens." Mounsey, 363 Mass. at 709, 297 N.E.2d at 53.

Reasonableness "is governed by the circumstances of each case and to a large extent depends on the 'opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties.'" Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 167, 292 N.E.2d 863, 865 (1973) (quoting Deagle v. Great Atl. & Pac. Tea Co., 343 Mass. 263, 265, 178 N.E.2d 286, 288 (1961)).

A breach of a duty of care may be proved by showing that: (1) the landowner caused the hazard; (2) the landowner had actual knowledge of the hazard; or (3) the hazard "was present on the [landowner]'s premises for such a length of time that the defendant should have known about it." Oliveri, 363 Mass. at 167, 292 N.E.2d at 864-65. The government asserts that because it neither caused the hazard nor had actual knowledge of the hazard, the only issue for this Court to consider is whether the condition existed for a long enough period of time such that the government should have been aware of it. Ms. Baler, on the other hand, contends that the government actually caused the hazard.

**Proof of the Existence of a Hazard**

The government does not dispute that as the landowner of the post office it owed a duty of reasonable care to Ms. Baler. That duty extends to dangers of which the landowner knew or should have known. See Oliveri, 363 Mass. at 166-69; 292 N.E.2d at 864-66. Ordinarily, therefore, the plaintiff will try to show the length of time for which the hazard was present. See, e.g., id., 363 Mass. at 167, 292 N.E.2d at 865; Prestopino v. Shaw's Supermarkets, Inc., 2002 Mass. App. Div. 25, 25, Anjou v. Boston Elevated Ry. Co., 208 Mass. 273, 273-4, 94 N.E. 386, 386 (1911). This may be established either by direct or circumstantial evidence. Oliveri, 363 Mass. at 168, 292 N.E.2d at 865. Where no inference can be made, based on the facts, as to the length of time that the danger was present, a jury will not be permitted to find for the plaintiff. Compare Oliveri, 363 Mass. at 169-71, 292 N.E.2d at 866-67 (finding that where the nature of a sticky substance was unknown, the fact that it was unmovable by kicking it could not lead to an inference as to the length of its presence and, therefore, the lower court should have directed a verdict for the defendant); and Prestopino, 2002 Mass. App. Div. at 25 (holding that where "no evidence concerning the length of the time that the wrinkled rug condition existed, who or what had caused the rug to become wrinkled and no employee was in the area of the rug at the time of [plaintiff's] fall," the trial judge's finding that the defendant business was in error was "clearly

8

erroneous" and reversing the judgment); with Anjou, 208 Mass. at 273, 94 N.E. at 386 (holding that the "black, flattened out and gritty" appearance of a banana peel was sufficient evidence to infer the length of time it had remained on the ground in the area).

The government contends that here, as in Oliveri and Prestopino, no evidence exists to prove that it breached its duty. Ms. Baler's own admission that she noticed no bunching on her way into the post office, but clearly noticed it fifteen to twenty minutes later, indicates that the hazard could have existed, at most, for a very short time. In addition, the contractors, Olympic Cleaning, cleaned the vestibule and vacuumed the mat daily between 11 a.m. and 2 p.m., and, according to Mr. Kelley, he checked the vestibule area, including the mat, once or twice a day. Without evidence as to the length of time the mat was bunched, or any evidence that the mat had ever presented a danger in the past, Ms. Baler cannot prove that the government knew or should have known of the hazard, and, in turn, that the government breached its duty of care.

**Placement of the Removable Mat in the Post Office Vestibule**

Ms. Baler contends that the length of time that the removable mat was bunched is not relevant because the government caused a hazard simply by placing

the removable mat in the vestibule. She asserts that the government breached its duty of care because: (1) the removable mat was too close to the swinging doors; (2) normal use of the rug would lead to the mat bunching; (3) the vestibule area was not adequately inspected for safety; and/or (4) being a post office, there should have been a heightened standard of care.

Ms. Baler's assertions, however, are not compelling. Although she contends that the length of time that the bunching in the mat over which she tripped is not relevant, the cases upon which she relies suggest the opposite. The crux of some of the cases, for example, is that the mats or rugs in question were old and worn. Waldo v. A.H. Phillips, Inc., 299 Mass. 349, 350-51, 12 N.E.2d 822, 822-23 (1938) (allowing testimony that a "rubber mat was worn on the surface, and the part of the mat that was lying on the tile was smooth and worn" as evidence that the mat created a dangerous condition); Mulloy v. Kay Jewelry Co., 289 Mass. 264, 265, 194 N.E. 116, 116 (1935) (holding evidence that a rubber mat was worn smooth "would *not* warrant a finding that the mat was unsuitable or improper material," but that "the evidence justified a finding that the mat by constant travel over it had become smooth and slippery at the place where the plaintiff fell, and that in the exercise of due care the defendant by proper inspection could have discovered its condition") (emphasis added); Tovey v. G.E.

Lothrop Theatres Co., 288 Mass. 346, 347-49, 193 N.E. 19, 19 (1934) (allowing evidence that a carpet was in use for two years, was threadbare, ragged, worn and was "curled up" as evidence that the defendants failed to exercise due care). These cases suggest not that the mere placement of a mat is a hazard, but that length of time is key.

Ms. Baler also attempts to analogize the post office's placement of a mat with vertically stacked pallets on a loading dock, Hoyt v. Roche Bros. Supermarkets, 26 Fed. Appx. 25 (1st Cir. 2002); a weighing machine located near a retail drug store entry way, Nye v. Louis K. Liggett Co., 224 Mass. 401, 113 N.E. 201 (1916); and a pallet jack left in the aisle of a store as part of a "'hands-on' warehouse retail concept." Murgo v. Home Depot USA, Inc., 190 F. Supp. 2d 248, 251 (D. Mass. 2002). None of these cases support Ms. Baler's assertion that the government created a hazard by placing the removable mat in the vestibule.

In addition, Ms. Baler's assertion that the vestibule was not adequately inspected is not supported by the evidence. Mr. Kelley inspected the area once or twice a day, the post office contracted with a cleaning company that cleaned the area daily, and a janitorial service replaced the removable mat with a new one on a weekly basis.

11

Furthermore, Ms. Baler contends that the government should have taken greater precautions to recognize and eliminate dangerous conditions. Ms. Baler does not further develop this assertion, but the Court presumes that she means that the government as landowner of a public post office should exercise greater care than a privately-owned establishment. To the extent she asserts that a greater standard of care should apply, this Circuit has expressly rejected that proposition. See Goldman, 790 F.2d at 182-84 (holding that the government has the same duty of care as an individual landowner to provide reasonably safe premises for all visitors and emphasizing that "[a] landowner . . . is not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonable indicate" (citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court ALLOWS the defendant's motion for summary judgment.

SO ORDERED.

7/28/05
Date

[signature]
United States Magistrate Judge